UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIBERTY MUTUAL FIRE INSURANCE
COMPANY as subrogee of GATOR
DELRAY, L.C. and GATOR DELRAY,
L.C. f/u/b/o LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

    Plaintiff,

v.                                                Case No: 8:16-cv-2791-T-30JSS

WAL-MART STORES EAST, LP and
WAL-MART STORES, INC.,

    Defendants.
_____

## ORDER

THIS CAUSE comes before the Court upon the following motions: (1) Plaintiff's Motion for Summary Judgment (Doc. 19) and Defendants' Response (Doc. 30); (2) Defendants' First Motion for Summary Judgment (Doc. 24), Plaintiff's Response (Doc. 29), and Defendants' Reply (Doc. 34); and (3) Defendants' Second Motion for Summary Judgment (Doc. 28) and Plaintiff's Response (Doc. 31). Upon review, the Court concludes that Plaintiff's motion should be granted in part and Defendants' motions should be denied.

### RELEVANT FACTS

Gator Delray, L.C. ("Gator") owns property at 3001 South Federal Highway in Delray Beach, Florida. The property is known as the South Delray Shopping Center. Effective February 16, 2012, Gator and Wal-Mart Stores East, LP ("Wal-Mart Stores

East") entered into a lease agreement for one of the buildings in the shopping center. Wal-Mart Stores, Inc. ("Wal-Mart") guaranteed Wal-Mart Stores East's performance of all conditions of the lease.

Pursuant to Section 10 of the lease agreement, Gator and Wal-Mart Stores East were both required to obtain liability insurance. Wal-Mart Stores East agreed to purchase insurance or self-insure in the amount of $3,000,000 to protect itself and Gator from liability for "injury or damage to persons or property and . . . damage upon and within the Demised Premises." (Doc. 1-4, p. 18-19.) Wal-Mart Stores East further agreed to defend and indemnify Gator "from and against any and all liability, which . . . arise from or are in connection with the possession, use, occupation, management, repair, maintenance or control of the Premises, or any portion thereof by [Wal-Mart Stores East] or its authorized agents, employees, contractors, sub-lessees or any other party claiming by or through [Wal-Mart Stores East]." (*Id*. at 19.) In return, Gator agreed to obtain insurance covering "the Common Areas, buildings (excluding the Demised Premises and any other building insured by tenants thereof), appurtenances and other improvements constituting the Shopping Center." (*Id*. at 20.)

The lease agreement required Wal-Mart Stores East to make a number of improvements to the Demised Premises. These improvements included "roof repairs and/or replacement." (*Id*. at 11.) Thus, Wal-Mart Stores East hired Bandes Construction Company to repair part of the roof. On August 26, 2013, Bandes' superintendent, Mark Callahan, fell through the roof and seriously injured himself.

On February 26, 2015, Callahan and his wife filed suit against Gator and Wal-Mart based on the injuries he sustained from the fall. They alleged that the defendants' negligence and Gator's breach of its non-delegable duties as property owner caused his injuries.

Wal-Mart responded to the lawsuit. Due to an oversight by Gator's office manager, Gator did not. The court entered a clerk's default against Gator on April 13, 2015. Months later, Gator's office manager realized her mistake. In September 2015, she asked Liberty Mutual to defend and indemnify Gator, but Liberty Mutual refused. There is a dispute of fact as to whether she subsequently asked Wal-Mart to defend or indemnify Gator.[1] If she did, Wal-Mart did not respond.

On November 18, 2015, Gator moved to set aside the default. On February 11, 2016, Liberty Mutual withdrew its disclaimer of coverage and agreed to defend and indemnify Gator. Then, on February 12, 2016, the court held a hearing regarding the motion to vacate but deferred ruling on the matter.

On February 23, 2016, the Callahans demanded that Liberty Mutual tender its liability coverage limits of $1,000,000 within 30 days in exchange for a release of Gator. On March 11, 2016, Gator's counsel tendered the demand to Wal-Mart and asked Wal-Mart to respond pursuant to its contractual obligation to defend and indemnify Gator. On

---

[1] Liberty Mutual points to an affidavit by Gator's office manager, in which she stated that she asked Wal-Mart to defend and indemnify Gator in October of 2015. Defendants, in turn, have submitted email evidence to suggest that the office manager sent this request to Gator's own attorney but not Wal-Mart.

3

March 16, 2016, Liberty Mutual's counsel asked the Callahans if they would release both Gator and Wal-Mart in exchange for payment of the $1,000,000 policy limit. The Callahans agreed. On March 18, 2016, Liberty Mutual's counsel wrote to Wal-Mart's counsel and asked if Wal-Mart would honor its agreement to indemnify Gator. Wal-Mart replied to both Gator and Liberty Mutual, explaining that it would not respond to the Callahans' demand because it had no duty to defend or indemnify Gator. Ultimately, Liberty Mutual tendered the $1,000,000 to the Callahans in exchange for a release of both Gator and Wal-Mart.

Thereafter, Liberty Mutual filed this action, suing Wal-Mart and Wal-Mart Stores East for breach of contract (Counts 1 and 2), indemnity (Count 3), equitable subrogation (Count 4), statutory contribution (Count 5), equitable contribution (Count 6), and unjust enrichment (Count 7). Defendants responded to the lawsuit by raising twenty-eight affirmative defenses. The Parties now have pending motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the

evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

Defendants move for summary judgment on all of seven claims, as well as two of their affirmative defenses. Plaintiff, in turn, moves for summary judgment on four of its claims and a number of Defendants' defenses. The Court will analyze the claims first and then the affirmative defenses.

**Count 1 – Breach of Lease's Self-Insurance Clause**

In Count 1, Liberty Mutual argues that Defendants breached the lease's self-insurance clause, which required Defendants to provide insurance to protect Gator and Wal-Mart Stores East from "injury or damage to persons . . . upon and within the Demised Premises." (Doc. 1-4, p. 18-19.) Liberty Mutual contends that Defendants breached this clause by failing to defend and indemnify Gator in the Callahans' lawsuit.

Defendants argue that the Court should grant summary judgment on Count 1 because Liberty Mutual has no standing to sue them for breach of the lease agreement. More specifically, they argue that Liberty Mutual cannot sue to enforce the lease because it was not a party to, or a third-party beneficiary of, the lease.

Defendants are correct that Liberty Mutual is not a third-party beneficiary of the lease. However, Liberty Mutual does not need to be in order to sue Defendants for breach of contract because Gator assigned Liberty Mutual that right. The Liberty Mutual insurance policy has a provision called "Transfer of Rights of Recovery Against Others to Us," which provides the following: "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us." (Doc. 2, p. 39.) Through this provision, Gator assigned any rights of recovery it had to Liberty Mutual. Since Gator would have the right to sue Defendants for breach of the lease, Liberty Mutual does too, as Gator's assignee.

Now that the Court has determined that Liberty Mutual has standing to sue Defendants for breach of the lease, the Court will evaluate Liberty Mutual's argument that it should grant summary judgment on Count 1. The Court will first analyze Defendants'

duty to defend and then their duty to indemnify pursuant to the lease's self-insurance clause.

*Duty to Defend*

In Florida, an insurer's duty to defend is determined from the allegations in the complaint against the insured. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813 (Fla. Dist. Ct. App. 1985) (citations omitted). The insurer must defend the insured if the allegations could allow the insured to be covered by the insurance policy. *State Farm Mutual Auto. Ins. Co. v. Universal Atlas Cement Co.,* 406 So. 2d 1184 (Fla. Dist. Ct. App. 1981). If the complaint alleges facts partially within and partially outside of the policy's coverage, the insurer is nevertheless obligated to defend the entire suit. *Khatib v. Old Dominion Ins. Co.*, 153 So. 3d 943, 947 (Fla. Dist. Ct. App. 2014) (citation omitted). If there are any doubts as to whether a duty to defend exists in a particular case, those doubts must be resolved in the insured's favor. *Baron Oil Co.,* 470 So. 2d at 814.

In the lease agreement, Defendants agreed to provide insurance for "injury or damage to persons . . . upon and within the Demised Premises." (Doc. 1-4, p. 18-19.) In the Callahans' complaint, they sued both Gator and Wal-Mart for the bodily injury Callahan sustained after falling through the roof of the Demised Premises. As such, it is obvious that the allegations in the Callahans' complaint created a duty for Wal-Mart Stores East (or Wal-Mart, as its guarantor) to defend Gator against the Callahans' lawsuit.

*Duty to Indemnify*

The duty to indemnify is narrower than the duty to defend. *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. Dist. Ct. App. 2006) (citation

omitted). Whereas the duty to defend is triggered by the allegations in the complaint, the duty to indemnify is determined by the underlying facts developed through discovery or adduced at trial. *Id*.

As noted previously, Defendants agreed to provide insurance for "injury or damage to persons . . . upon and within the Demised Premises." (Doc. 1-4, p. 18.) Defendants have admitted that Callahan's injuries occurred at the Demised Premises." (Doc. 20, p. 5.) Accordingly, they had a duty to indemnify Gator for the Callahans' damages.

*Equitable Estoppel*

Although Defendants had a duty to defend and indemnify Gator, the Court cannot grant summary judgment on Count 1 because there are factual disputes regarding (1) whether Gator timely asked Wal-Mart to defend or indemnify it and (2) whether Gator's delay prejudiced Wal-Mart. This is relevant because notice of a claim is generally a condition precedent to coverage under an insurance policy. *Bankers Ins. Co. v. Macias,* 475 So. 2d 1216, 1218 (Fla. 1985). Under Florida law, failure to provide notice in contravention of a policy provision creates a rebuttable presumption that the insurer has been prejudiced and provides a legal basis for the denial of coverage. *Id*. at 1217-18; *Ideal Mut. Ins. Co. v. Waldrep,* 400 So. 2d 782, 785 (Fla. Dist. Ct. App. 1981).

In this case, there was no insurance policy requiring Gator to promptly notify Defendants of its request for a defense, and the lease does not appear to contain a similar notice provision. In addition, as Liberty Mutual argues, Wal-Mart undoubtedly had notice of the lawsuit because the Callahans named both Gator and Wal-Mart as defendants in the suit. That said, there is a difference between having notice that Gator was sued and having

notice that Gator expected Wal-Mart to defend it in that suit. If Gator failed to request a defense from Wal-Mart until over a year after the Callahans filed their lawsuit, Wal-Mart may not have known that Gator expected it to provide a defense, and it may have relied on Gator's silence to its detriment. For this reason, the Court thinks it proper to consider at trial whether Gator (and Liberty Mutual, as its assignee) should be equitably estopped from suing Defendants for breaching their duties under the self-insurance clause, as Defendants contend in their fourteenth affirmative defense.[2]

**Counts 2 and 3 – Breach of Lease's Indemnity Clause & Entitlement to Indemnity**

In Count 2, Liberty Mutual argues that Defendants breached the lease's indemnity clause, which provided that Defendants would defend and indemnify Gator "from and against any and all liability, which . . . arise from or are in connection with the possession, . . . repair, maintenance[,] or control of the Premises . . . by [Wal-Mart Stores East] or its authorized agents [or] contractors." (Doc. 1-4, p. 19.) In Count 3, Liberty Mutual sues Defendants directly for contractual indemnity.

Both Parties move for summary judgment on Counts 2 and 3. Defendants have admitted that Callahan's injuries "arose from and were connected to Wal-Mart Stores East's possession, . . . repair, maintenance[,] or control of the Premises." (Doc. 20, p. 5.) Thus, Defendants have an obligation to indemnify Gator unless some other provision of

---

[2] Of course, to win on this argument, Defendants will have to prove that they were prejudiced by the lack of notice. This may be an uphill battle, given that Wal-Mart knew of the Callahans' lawsuit and was actively investigating the merits of the Callahans' claims for purposes of its own defense.

the lease limits their duty. Defendants argue that there are three such provisions.

First, Defendants point to the last sentence of Section 10(A), which provides that "[Wal-Mart Stores East] shall pay, satisfy and discharge any judgments, orders and decrees which may be recovered against [Gator] . . . for which [Gator] would be responsible pursuant to the indemnification contained in this Section 10(A)." (Doc. 1-4, p. 20.) Defendants argue that, because of this sentence, they need only indemnify Gator for judgments and not settlements. This interpretation is unreasonable in light of the preceding language, which states that Defendants will indemnify Gator "from and against any and all liability." (*Id*. at 19.) The sentence regarding "judgments" was likely intended to expand Defendants' duty to indemnify and not limit it.

Second, Defendants point to Section 4(B), which provides that "[Wal-Mart Stores East] shall indemnify, defend, and hold harmless [Gator] from and against all losses . . . caused by [Wal-Mart Stores East's] exercise of its inspections, except those arising from the negligence or willful misconduct of [Gator] . . . or relating to a preexisting condition of the Shopping Center." (*Id*. at 12.) This provision relates to Wal-Mart Stores East's obligation to indemnify Gator for losses sustained during its inspection of the Demised Premises prior to entering into the lease. Callahan's injuries did not occur during Wal-Mart Stores East's inspection of the Demised Premises, so this provision is clearly irrelevant to Defendants' duty to indemnify Gator for the Callahans' loss.

Third, Defendants point to Section 22(B)(6), which provides that "[Gator] shall indemnify, defend and hold harmless [Wal-Mart Stores East] . . . from and against any and all penalties, fines, suits, . . . [and] liabilities . . . arising out of or in any way related to any

10

regulatory violation or Hazardous Materials affecting the Demised Premises . . . which first occurred at any time prior to the Commencement Date." Section 22 discusses Gator's representations and obligations relating to hazardous substances. When read in context, then, it is clear that Section 22(B)(6)'s reference to "regulatory violations" means violations of environmental laws related to hazardous substances. Defendants have pointed to no evidence of this kind of regulatory violation, so this provision is inapplicable.

In sum, no other provisions of the lease limit Defendants' obligation to indemnify Gator for the Callahans' damages. Defendants' failure to provide indemnity constituted a breach of contract and entitles Liberty Mutual to indemnity. For these reasons, the Court will grant summary judgment in Liberty Mutual's favor on Counts 2 and 3, but only on the issue of liability.

Finally, the Court notes that Defendants make a number of arguments regarding the appropriate amount of indemnification. This has no bearing on Defendants' liability but instead relates to the proper amount of damages. Defendants will have an opportunity to argue at trial whether the $1,000,000 payment constituted an unreasonable settlement amount. If so, Liberty Mutual's damages will be reduced accordingly.

**Count 4 – Equitable Subrogation**

Equitable subrogation is a cause of action which is designed "to afford relief to one who is required to pay a legal obligation of another." *Phoenix Ins. Co. v. Florida Farm Bureau Mut. Ins. Co.*, 558 So. 2d 1048, 1050 (Fla. Dist. Ct. App. 1990) (citation omitted). A right to equitable subrogation is not created by contract but rather "by the legal

consequences of the acts and relationships of the parties." *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999) (citation omitted).

An insurer can pursue equitable subrogation under different theories. For example, an insurer who has paid an insured's loss might sue to recover that amount from the tortfeasor who was actually responsible for the loss. *E.g., id.* at 646. Alternatively, if the insurer who paid the claim was merely an excess insurer, it might sue the primary insurer to recover its payment. *E.g.*, *Phoenix Ins. Co.*, 558 So. 2d at 1050. Generally, equitable subrogation is appropriate where: (1) the insurer made the payment to protect his or her own interest, (2) the insurer did not act as a volunteer, (3) the insurer was not primarily liable for the debt, (4) the insurer paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. *Dade Cty. Sch. Bd.*, 731 So. 2d at 646 (citations omitted).

Both Defendants and Liberty Mutual move for summary judgment on the equitable subrogation claim. For the reasons discussed below, the Court must deny both requests.

Defendants argue that Liberty Mutual cannot bring an equitable subrogation claim because (1) no judgment was entered in the Callahans' underlying lawsuit, (2) Gator's lease agreement waived Liberty Mutual's right to subrogation against Wal-Mart Stores East, and (3) the Callahans executed a general release that did not carve out a right for Liberty Mutual to pursue a subrogation claim.

A right to subrogation arises either when a judgment is entered "or payment has been made." *Nat'l Union Fire Ins. Co. v. Se. Bank, N.A.*, 476 So. 2d 766, 767 (Fla. Dist. Ct. App. 1985). Thus, an insurer may have subrogation rights declared after it has paid a

judgment *or* settlement on behalf of its insured. *Id*. Because Liberty Mutual paid to settle the Callahans' claim against Gator, it may appropriately bring a subrogation claim.

Furthermore, the lease agreement's "Mutual Waiver of Claim and Subrogation" does not preclude Liberty Mutual from pursuing subrogation. Pursuant to that waiver, Gator and Wal-Mart Stores East agreed to release each other from liability, including through subrogation, "for any loss or damage to any property (real or personal)." (Doc. 1-4, p. 24.) The Callahans' lawsuit did not involve loss or damage to property; it was for bodily injury. Accordingly, the waiver does not bar Liberty Mutual's subrogation claim.

Likewise, the general release executed by the Callahans does not bar Liberty Mutual from pursuing a subrogation claim. Defendants argue that Liberty Mutual waived its right to subrogation when it settled the Callahans' claim against Wal-Mart without obtaining an agreement preserving this right. "An insurer waives its right to subrogation when it neither obtains an agreement preserving its right . . . , *nor in any way disclaims its liability*." *Airmanship, Inc. v. U.S. Aviation Underwriters, Inc.*, 559 So. 2d 89, 92 (Fla. Dist. Ct. App. 1990) (emphasis in original) (citations omitted). As the court in *Airmanship* noted, "[t]o hold otherwise would countenance an insurance company's unilateral action prolonging litigation and would discourage settlements." *Id*. at 93. Before agreeing to pay the $1,000,000 policy limit to the Callahans, Liberty Mutual asked Wal-Mart to honor its indemnity agreement with Gator. Because Wal-Mart did not, Liberty Mutual made the payment. A reasonable jury could find Liberty Mutual's request to be a disclaimer of liability. *See id*. at 91-92 (an insurer's demands that a second insurer defend and indemnify the insured preserved its right to equitable subrogation).

Despite Defendants' arguments, Liberty Mutual has the right to pursue an equitable subrogation claim. To succeed on this claim at trial, however, Liberty Mutual will have to prove that it was not primarily liable for paying the settlement, either because (1) Wal-Mart Stores East (and not Gator) was liable for the Callahans' damages or (2) Liberty Mutual was the excess (and not primary) insurer for purposes of covering the loss. The Parties dispute who was at fault for the Callahans' damages, and they have not cited to facts from which the Court can determine the priority between the two insurance policies. For these reasons, the Court cannot grant summary judgment on this claim.

**Count 5 – Statutory Contribution**

Under the Uniform Contribution Among Tortfeasors Act, "a liability insurer who . . . has discharged in full or in part the liability of a tortfeasor . . . is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability." Fla. Stat. § 768.31(e). The Act describes the tortfeasor's right to contribution as follows: "[W]hen two or more persons become jointly or severally liable in tort for the same injury to person or property . . . there is a right of contribution among them even though judgment has not been recovered against all or any of them." *Id.* § 768.31(a).

Defendants argue that Liberty Mutual has no right to contribution because Gator and Wal-Mart could not have been found jointly and severally liable in the Callahans' action. The Callahans sued both parties for negligence. Although historically defendants in a negligence action could have been found jointly and severally liable for a plaintiff's damages, they can now be held liable only for their own percentage of the fault.

Defendants argue that Florida's adoption of comparative fault in negligence actions abrogated the right to statutory contribution.

While a negligence action is ongoing, the defendant should not file a third-party complaint for contribution but should instead plead that another party is at fault pursuant to the Comparative Fault statute. *T & S Enterprises Handicap Accessibility, Inc. v. Wink Indus. Maint. & Repair, Inc.*, 11 So. 3d 411, 413 (Fla. Dist. Ct. App. 2009). Under these circumstances, the Uniform Contribution Among Tortfeasors Act "appears to have been rendered obsolete." *Id.*

The circumstances here are different—this is a direct action for contribution after Gator allegedly paid more than its pro rata share of the liability. *T & S Enterprises* has no bearing on the right of a defendant to file a direct action for contribution after it has settled the case. *See id.* ("This decision does not determine any rights [the defendant tortfeasor] may have if it elects to settle the plaintiff's claims in exchange for a general release which includes [the other alleged tortfeasor].") Despite the passage of the Comparative Fault statute, courts still allow a tortfeasor (or his or her assignee) to sue for contribution after settling a negligence claim. *E.g.*, *Carpenter v. Bachman Enterprises, Inc.*, 657 So. 2d 42, 44 (Fla. Dist. Ct. App. 1995). Liberty Mutual is doing just that. Accordingly, Defendants' request for summary judgment on Count 5 must be denied.

**Count 6 – Equitable Contribution**

The doctrine of equitable contribution attempts to ensure that the burden of performing a common obligation is equally distributed between those who have the obligation. *Fletcher v. Anderson,* 616 So. 2d 1201, 1202 (Fla. Dist. Ct. App. 1993) (citation

15

omitted). When a party has paid in excess of its pro rata share of the obligation, it is entitled by law to contribution from the other parties for their share. *Id*.

Defendants argue that Liberty Mutual cannot sue for equitable contribution because Florida law does not recognize this cause of action between insurers. This is incorrect. Florida law permits insurance carriers to sue for equitable contribution. *See Employers' Fire Ins. Co. v. Continental Ins. Co.,* 326 So. 2d 177, 180 (Fla. 1976) (implicitly recognizing excess insurer's right to assert contribution claim against primary insurer). However, the insurer cannot recover for its defense costs (i.e., attorney's fees and litigation costs), only the amount it paid to indemnify the insured. *Cont'l Cas. Co. v. United Pac. Ins. Co.*, 637 So. 2d 270, 275 (Fla. Dist. Ct. App. 1994). Liberty Mutual does not seek to recover its defense costs pursuant to its equitable contribution claim, so its claim is proper.

Defendants next argue that Liberty Mutual cannot sue them for equitable contribution because they are a self-insurer and not an insurer. The case law Defendants cite does not support their argument. Moreover, although the lease uses the term "self-insure," Defendants are not simply an individual self-insurer because they contracted, for consideration, to provide insurance covering Gator for liability related to the Demised Premises. Consequently, Liberty Mutual may bring a contribution claim against Defendants.

**Count 7 – Unjust Enrichment**

"A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a 'contract' as a matter of law." *Tooltrend, Inc. v. CMT Utensili, SRL*,

16

198 F.3d 802, 805 (11th Cir. 1999) (citing *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.,* 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997) (en banc)). "[T]he law will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Id.* To succeed on a claim for unjust enrichment, a plaintiff must prove the following: (1) he or she has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value. *See Greenfield v. Manor Care, Inc.,* 705 So. 2d 926, 930-31 (Fla. Dist. Ct. App. 1997).

Defendants argue that the Court should not permit Liberty Mutual to proceed under an unjust enrichment theory "for various reasons, including public policy." It does not elaborate, other than to argue that it was appropriate for Liberty Mutual to indemnify Gator. That is not the relevant inquiry. Instead, the question is whether Wal-Mart unjustly benefited from that $1,000,000 settlement payment.

Liberty Mutual has pointed to sufficient facts that a jury could find unjust enrichment. Liberty Mutual's payment released Wal-Mart from all liability in the Callahans' suit, but Wal-Mart contributed no money to the settlement. If Wal-Mart Stores East was completely or partially at fault for the Callahans' damages, then it would certainly be inequitable for Wal-Mart to retain the full benefit of Liberty Mutual's payment.

Liberty Mutual asks the Court to grant summary judgment in its favor, but the Court cannot grant this request for the same reasons discussed in the previous sections. The Court

17

cannot determine whether Wal-Mart was unjustly enriched without knowing which party was at fault for the Callahans' injuries.

**Affirmative Defenses 7 and 17 – Status as Additional Insured**

The Parties also seek summary judgment on Defendants' seventh and seventeenth affirmative defenses. In these defenses, Defendants argue that Liberty Mutual cannot bring a subrogation claim against them because Wal-Mart Stores East qualified as an additional insured under Gator's insurance policy with Liberty Mutual.

The Liberty Mutual policy contains two additional insured provisions. Under these provisions, the definition of the "insured" is "amended to include . . . any person or organization to whom [Gator] is obligated by a written agreement to procure additional insured coverage." (Doc. 1-3, p. 64, 66.) "For any additional insured that obtains insured status on [the Liberty Mutual] policy," Liberty Mutual agreed to waive its right to subrogation for payments "to which [the] insurance applies." (*Id*. at 65-66.) However, the policy notes that "[t]he insurance provided by [the additional insured] endorsement[s] applies only to coverages and limits of insurance required by written agreement." (*Id*.)

Thus, Liberty Mutual waived its right to subrogation against Wal-Mart Stores East only if the policy covered Wal-Mart Stores East against the Callahans' claim. This, in turn, depends on whether Gator was required to obtain insurance naming Wal-Mart Stores East as an additional insured for this kind of claim. It was not.

Pursuant to the lease agreement, Gator did have to obtain liability insurance that would name Wal-Mart Stores East as an additional insured, but only for the "Common Areas, buildings (excluding the Demised Premises and any other building insured by

18

tenants thereof), appurtenances and other improvements constituting the Shopping Center." (Doc. 1-4, p. 17.) Gator had no duty to procure liability insurance for damages occurring at the Demised Premises—that was Wal-Mart Stores East's contractual obligation. Defendants admitted that Callahan's injury occurred at the Demised Premises. (Doc. 20, p. 4.) Accordingly, the additional insured endorsements did not provide Wal-Mart Stores East coverage for the Callahans' claim, and Liberty Mutual did not waive its right to subrogation against Defendants.

**Remaining Affirmative Defenses**

Liberty Mutual also moves for summary judgment on Defendants' first, second, third, fourth, fifth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, twenty-second, twenty-third, and twenty-seventh affirmative defenses. These defenses have already been addressed by this Order. The Court grants summary judgment on the fourth, fifth, and twenty-seventh affirmative defenses but denies summary judgment on the others because there are disputed material facts as discussed herein.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment (Doc. 19) is granted in part and denied in part. The Court grants summary judgment on Counts 2 and 3 as to Defendants' liability only. The Court also grants summary judgment on Defendants' Affirmative Defenses 4, 5, 7, 17, and 27. Plaintiff's motion is otherwise denied.

2. Defendants' First Motion for Summary Judgment (Doc. 24) is denied.

3. Defendants' Second Motion for Summary Judgment (Doc. 28) is denied.

**DONE** and **ORDERED** in Tampa, Florida, on August 25, 2017.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record